UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEELA MAYA POUDEL,<br><br>                  Plaintiff,<br><br>    v.<br><br>CAROLYN COLVIN, Acting Commissioner of Social Security,<br><br>                  Defendant. | Case No. C13-1907 RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

       Leela Maya Poudel appeals the ALJ's decision finding her not disabled.[1] Utilizing the five-step disability sequential evaluation process, the ALJ found at step one Ms. Poudel last worked in March 2010. At step two the ALJ considered Ms. Poudel's claim she was disabled due to hearing loss and cognitive limitations but found that there were "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." Tr. 22. Rather than relying on this determination to find Ms. Poudel was not disabled, the ALJ found that even if Ms. Poudel's hearing loss and cognitive limitations were severe impairments, she retained the residual functional capacity ("RFC") to "perform a full range of work at all

---

[1] The ALJ's decision is the Commissioner's final decision because the Appeals Council denied review. Tr. 1. The remainder of the procedural history is not at issue and need not be discussed.

REPORT AND RECOMMENDATION - 1

exertional levels but with the following nonexertional limitations: "the claimant is limited to simple, repetitive tasks. She should avoid concentrated exposure to noise." Tr. 22. The ALJ found at steps four and five that based on this RFC determination, although Ms. Poudel had no past work, her hearing and cognitive limitations had "little or no effect on the occupational base for unskilled work at all levels," and that therefore she was "'not disabled' . . . under the framework of section 204.00 in the Medical-Vocational Guidelines." ("Grids").[2] Tr. 24.

Ms. Poudel argues the ALJ erred by (1) failing to find her hearing and cognitive impairments were severe impairments at step two and (2) misevaluating the opinions of Ted Judd, Ph.D., and Margaret Sekijima, ARNP. She contends these errors were harmful because they resulted in RFC and step-five determinations that failed to account for all of her limitations. As discussed below, the ALJ committed harmless step two error in finding Ms. Poudel's hearing and cognitive impairments were not medically determinable. The error was harmless because the ALJ did not deny Ms. Poudel's disability application at step two. Instead, the ALJ included hearing and cognitive limitations in determining Ms. Poudel's RFC and proceeded to step five of the disability determination process. The ALJ's RFC determination was partly based on his evaluation of the opinions of Dr. Judd and Ms. Sekijima; the Court finds the ALJ properly evaluated these opinions. However, the ALJ committed reversible error at step five by relying on the Grids to find Ms. Poudel not disabled. Accordingly, the Court recommends the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

---

[2] The ALJ did not make step 3 findings. Whether this was erroneous need not be addressed because Ms. Poudel has not assigned error to the ALJ's failure to make step 3 findings. *Cf.*, *Socop-Gonzalez v. I.N.S.,* 272 F.3d 1176, 1185 (9th Cir. 2001) (Issues not raised in the opening brief will not be considered.).

REPORT AND RECOMMENDATION - 2

## DISCUSSION

**A.   The ALJ Committed Harmless Error at Step Two**

Ms. Poudel contends the ALJ erred at step two in failing to find her hearing and cognitive impairments were severe impairments. Even if the ALJ so erred,[3] the error was harmless because the ALJ included limitations flowing from the impairments in determining Ms. Poudel's RFC and also considered the impairments in assessing whether Ms. Poudel was disabled at step five. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding where ALJ considered evidence of limitations posed by claimant's bursitis at step four, any error in failing to consider bursitis "severe" at step two was harmless). Accordingly, Ms. Poudel has failed to meet her burden of establishing reversible step two error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (party attacking an agency's determination carries burden of showing harmful error).

**B.   The ALJ's Residual Functional Assessment Determination**

Assuming that Ms. Poudel's hearing and cognitive impairments were "severe impairments" the ALJ continued with the five step sequential disability analysis and examined the evidence regarding these impairments to determine Ms. Poudel's residual functional capacity. Tr. 22. Ms. Poudel contends the ALJ harmfully erred by misevaluating the opinions of Tedd Judd, Ph.D., and Margaret Sekijima, ARNP, because the errors led to a RFC determination that failed to account for all of her limitations, and an improper step five determination that she was not disabled. Dkt. 16 at 8-12.

   *1.   Dr. Judd*

Ms. Poudel argues the ALJ erred because Dr. Judd opined she was functioning at the "mildly to moderately mentally retarded level." Dkt. 16 at 6. The record does not support this

---

[3] The Commissioner concedes the medical evidence "undermines the ALJ's conclusions about the medical determinability of Plaintiff's hearing impairment." Dkt. 19 at 3.

argument. Dr. Judge did not diagnose Ms. Poudel with retardation or any other medically determinable cognitive condition. His neuropsychological examination of Ms. Poudel was difficult because it was performed with the help of an interpreter who the doctor stated "was poor as an interpreter, with poor signing ability, poor English, and a poor sense of how to function as an interpreter." Tr. 234. Dr. Judd administered a "non-verbal" test. He indicated Ms. Poudel was unable to comprehend what was expected of her on this test," and came to the following conclusions:

> Neuropsychological evaluations in cases such as this one can be helpful in ruling out major neuropsychological deficits, but it is more difficult to evaluat[e] subtle symptoms with confidence because of limitations of appropriate tests and norms and other limitations of cross-cultural communications. It appears that in her language and academic adaptive functioning Ms. Poudel is currently functioning at a mildly to moderately mentally retarded level. It is not possible to determine at this time under these very trying circumstances to what exten[t] her low level of intellectual functioning is due to lack of education and access to language and possible family overprotection.

Tr. 237. Dr. Judd's conclusions indicate he had little confidence in the results of the tests he administered due to language problems and limits in testing norms, and that he could not determine whether Ms. Poudel's functional limitations were a result of cognitive limitations or lack of language skills and education and her family protection. The Court thus cannot say it was unreasonable for the ALJ to find Dr. Judd's evaluation was "inconclusive," and that "it was not possible to determine if [her] functional deficits were associated with family overprotection, lack of education, or access to language." Tr. 22. Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Judd's opinion. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.2009) (Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion).

REPORT AND RECOMMENDATION - 4

//

**2.    *Ms. Sekijima***

Ms. Poudel also contends the ALJ erred in discounting the opinions of Margaret Sekijima, ARNP, who diagnosed her with depression, adjustment disorder, retardation, disturbance of emotions and assigned a GAF score of 35.  Dkt. 16 at 7.  She argues the ALJ's error was harmful because it resulted in a RFC determination that failed to account for limitations flowing from Ms. Sekijima's diagnoses.  The argument fails.  As an ARNP, Ms. Sekijima is not an acceptable medical source.  20 C.F.R. § 404.1513(a).  Acceptable medical sources include licensed physicians, either medical or osteopathic doctors.  *Id.*  As such, Ms. Sekijima's opinions cannot establish the existence of a medically determinable severe impairment.  *See* 20 C.F.R. § 404.1513(a) (Evidence from an acceptable medical source is required to establish the existence of a medically determinable severe impairment.).

Here, there is no evidence from an acceptable medical source that shows the disorders Ms. Sekijima mentioned—adjustment disorder, retardation, and disturbance of emotions—were medically determinable severe impairments.  This is fatal to Ms. Poudel's argument because the RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  In fact, SSR 96-8p[4] directs the ALJ to consider only limitations and restrictions attributable to medically determinable impairments, and cautions that it would be incorrect for an ALJ to find that an individual has limitations or restrictions beyond those caused by his or her medically determinable impairments.  To be sure, Ms. Sekijima reported symptoms that she believed were

---

[4] SSRs do not have the force of law but are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

REPORT AND RECOMMENDATION - 5

caused by mental health problems. But her testimony, like a claimant's testimony about her symptoms is, alone, insufficient to establish a physical or mental impairment as medically determinable. 20 C.F.R. § 404.1508, 404.1528(a).

Accordingly, the ALJ cannot be faulted for discounting Ms. Sekijima's opinion that her mental impairments markedly limited her. As the ALJ noted, Ms. Sekijima "predicated her opinion on diagnoses that, as discussed above, are not established by the medical evidence." Tr. 23. Substantial evidence supports the ALJ's reasoning because no acceptable medical source diagnosed Ms. Poudel with the conditions found by Ms. Sekijima: depression, adjustment disorder, retardation, or disturbance of emotions. Based on this record, the ALJ properly applied SSR 96-8p's directive to avoid finding Ms. Poudel had limitations or restrictions beyond those caused by her medically determinable impairments.

## C.     The ALJ Erred at Step Five

Ms. Poudel argues the ALJ erred at step five by ignoring her nonexertional limitations and relying on the Grids to find her not disabled. Dkt. 16 at 14. At step five, the ALJ had the burden of showing Ms. Poudel could perform a significant number of jobs in the national economy, taking into consideration her RFC, age, education, and work experience. 20 C.F.R. § 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099–1100 (9th Cir. 1999). The Grids identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *See Heckler v. Campbell*, 461 U.S. 458, 461 (1983). Where the grids match a claimant's qualifications, they direct a finding of either disabled or not disabled. *Id*. An ALJ may properly rely on the Grids instead of taking testimony from a vocational expert only if the Grids "accurately and completely describe a claimant's impairments." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ applied the Grids based on a RFC determination that Ms. Poudel could perform the full range of work at all exertional levels under "Section 204.00 of the Medical–Vocational Guidelines."[5] Tr. 24.  However, "in order for an individual to do a full range of work at a given exertional level . . . the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level." SSR 96–8p.  Because the Grids are based only on strength factors, they are not sufficient when a claimant suffers from nonexertional limitations.  *Holohan*, 246 F.3d at 1208.  A nonexertional limitation is an impairment that "limits the claimant's ability to work without directly affecting his strength." *Bruton v. Massanari*, 268 F. 3d 824, 828 (9th Cir. 2001).  Functional limitations caused by depression, concentration, and memory impairments are nonexertional limitations. 20 C.F.R. § 404.1569(c)(I)-(iii); *see Holohan*, 246 F.3d at 1208–09 (holding that the ALJ committed "clear legal error" by relying entirely on the grids when the claimant suffered from psychiatric impairments).  Functional limitations caused by hearing loss are also a nonexertional limitation.  *See Palomares v. Astrue*, 887 F.Supp.2d 906, 923 (N.D. Cal. 2012) (ALJ may not rely on Grids where claimant's RFC included limitation that cannot perform jobs requiring fine hearing capability.).

Here, the ALJ found "the claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations." Tr. 24.  Despite this finding, the ALJ concluded, without explanation, that "these limitations have little to no effect on the occupational base of unskilled work at all exertional levels." *Id.*  The Commissioner defends this finding arguing the ALJ properly found Ms. Poudel's hearing loss and cognitive limitations were not severe impairments, and that the ALJ correctly discounted the opinions of Dr. Judd and Ms.

---

[5] Medical–Vocational Rule 204.00 states that "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for employment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

REPORT AND RECOMMENDATION - 7

Sekijima. Dkt. 19 at 10.  As such, the Commissioner contends the ALJ correctly concluded that these impairments had no effect on the occupational base and properly relied on the Grids.  The argument fails because it is contrary to the manner in which the ALJ denied Ms. Poudel's disability claim.  The ALJ did not resolve the case at step two, i.e., that Ms. Poudel was not disabled because hearing loss and cognitive impairment were nonsevere.  If he had, he would not have gone on to assessing Ms. Poudel's RFC and making step four and five findings.  Additionally, the ALJ did not find Ms. Poudel had the RFC to "perform a full range of work at all levels," without any further limitations, i.e., a finding indicating Ms. Poudel had no limitations and was not disabled.  Tr. 22.  Instead, despite rejecting the opinions of Dr. Judd and Ms. Sekijima, the ALJ nonetheless included cognitive and hearing limitations in his RFC determination by finding Ms. Poudel's capacity to perform work was limited to simple repetitive work and that she could only do work that did not expose her to concentrated exposure to noise.  Tr. 22.  The ALJ's inclusion of these limitations in his RFC determination, and his statement, at step five,  that Ms. Poudel's ability to work was "compromised by nonexertional limitations," thus show the ALJ found the limitations had a limiting impact on her ability to work, not that the limitations had no effect as the Commissioner suggests.  Tr. 24.

      Accordingly, the ALJ erred in concluding, without explanation, that Ms. Poudel's cognitive and hearing limitations had no effect on the occupational base of unskilled work at all exertional levels.  The ALJ's conclusory approach is contrary to the Social Security Administration's rulings.  An ALJ is excused from calling a vocational expert at step five only where it is "clear that the limitation has very little effect on the exertional occupational base."  SSR 83–14.  The ALJ failed to meet this requirement by failing to provide any explanation justifying his finding.  Additionally the Administration's rules direct an ALJ that in considering

the impact of various RFC limitations that may affect the occupational base, the ALJ should note:

> Since all work environments entail some level of noise, restrictions on the ability to work in a noisy workplace must be evaluated on an individual basis. The unskilled sedentary occupational base may or may not be significantly eroded depending on the facts in the case record. In such cases, it may be especially useful to consult a vocational resource.

SSR 96–9 (July 2, 1996), available at 1996 WL 374185 at *7–8 (referring to the occupational base for sedentary work).  The ALJ should thus have either clearly explained  why Ms. Poudel's hearing impairment did not erode the occupational base, or called a vocational expert, as recommended by SSR 96-9.  In sum, the ALJ erred in failing to provide any explanation that clearly established Ms. Poudel's cognitive and hearing limitations had little to no effect on the occupational for all unskilled jobs, and that she therefore was not disabled under the Grids.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  On remand, the ALJ should reconsider his findings at step five.  The ALJ should either provide a clear explanation of why Ms. Poudel's nonexertional impairments have no effect on the occupational base or call a VE to testify whether there are jobs Ms. Poudel could perform based on her RFC.  Because Dr. Judd's evaluation is inconclusive, the ALJ may expand the record as deemed appropriate.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **July 7, 2014.**  If no objections are filed, the Clerk should note the matter as ready for the Court's consideration on **July 11, 2014.**  If objections are filed, any response is due within 14 days after being served with

REPORT AND RECOMMENDATION - 9

the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed **seven** pages.  The failure to timely object may affect the right to appeal.

DATED this 23rd day of June, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10